Fred Lenn JONES, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

Nos. 84–3695, 85–3706.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided March 6, 1986.

Janet Sherman, Santa Monica, Cal., for petitioner-appellant.

Jerry Diskin, Asst. U.S. Atty., Seattle, Wash., for respondent-appellee.

Before WRIGHT and REINHARDT, Circuit Judges, and INGRAM,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

In this case we are asked to decide whether alleged inaccuracies in a presentence report or the sentencing judge's subjective expectations about the Parole Commission's application of parole guidelines are sufficient grounds to vacate or amend a sentence under 28 U.S.C. § 2255. The district court denied Jones' § 2255 motion, and we affirm.

## FACTS AND PROCEEDINGS BELOW

Jones was convicted in 1978 of conspiracy to distribute heroin, distribution of heroin, and use of a telephone to facilitate a felony. He was sentenced to 15 years in prison, fined $60,000, and given a special parole term of five years.[1] The conviction was affirmed. *United States v. Jones*, 612 F.2d 453 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

Following two unsuccessful Rule 35 motions, Jones moved under 28 U.S.C. § 2255 to correct his sentence, alleging material errors in the presentence report and ineffective assistance of counsel.[2] The motion was referred to a magistrate who ruled that, because Jones had not raised the erro-

---

* Of the Northern District of California.

1. The special parole term with respect to the conspiracy count was vacated by order of the district court on September 15, 1980.

2. Jones contended that the presentence report contained five inaccuracies: (1) Jones was one of the largest dealers on the west coast; (2) he made $100,000 a day for three years; (3) he was the major link in a ring importing heroin from Mexico; (4) he had a "sophisticated" distribution network; and (5) his father and grandfather were large-scale heroin distributors. In September 1981, the district court deleted the reference to his daily income of $100,000 a day. Jones also contended his counsel failed to show him a copy of the report and failed to move to correct its factual inaccuracies.

neous report issue either at sentencing or on appeal, it was waived and could not be raised in a § 2255 motion. He found also that the ineffective assistance of counsel claim failed because no prejudice had been shown.

The district court adopted the magistrate's recommendation and denied Jones' motion to correct his sentence. This court affirmed by unpublished memorandum. *Jones v. United States,* 730 F.2d 766 (9th Cir.1984).[3]

In January 1983, Jones moved to correct the presentence report, requesting deletion of nine inaccurate statements.[4] In December 1983, the court denied his motion. It found that the report contained no statements "which the Court knows of its own knowledge to be false and which should, therefore, be corrected by the Court." Jones' motion for reconsideration was denied.

In March 1984, Jones moved for an evidentiary hearing, contending that sufficient factual contentions had been raised regarding the falsity of statements in the report. The motion was granted and a hearing held in November 1984.[5] In March 1985, the court revised one statement in the report,[6] but denied Jones' motion to set aside the sentence. Jones timely appealed.

**3.** In that appeal, Jones did not challenge the district court's order as to the alleged inaccuracies in the presentence report. His ineffective assistance of counsel claim did not allege any legal representation errors as to the report.

**4.** In its order denying the § 2255 motion, the district court had invited Jones to seek an order correcting the presentence report. Jones responded by challenging these statements: (1) the DEA had "known" Jones since 1974; (2) an unnamed source told DEA about a Seattle heroin sale involving a "black man" from California, "tentatively identified" as Fred Jones; (3) Jones admitted possession of the Seattle heroin; (4) Zuniga, at Jones' request, had called Jones' wife to inform her of his arrest; (5) Pillard purchased heroin from Jones on May 3, 1976; (6) the government witness was a "former member of Jones' organization;" (7) Jones brought 4.4 pounds of heroin to Seattle and was the source of all the drugs in the transaction; (8) he was a significant dealer, importing drugs from Mexico; and (9) he owns property worth almost $1,000,000.

ISSUES PRESENTED

(1) Did the district court err in denying Jones' § 2255 motion to vacate or amend his sentence?

(2) Was Jones denied effective assistance of counsel?

(3) Did the Parole Commission improperly rely on false information in the presentence report?

(4) Does the sentencing judge's reliance on inaccurate estimates as to the Parole Commission's application of parole guidelines entitle petitioner to relief under § 2255?

ANALYSIS

*A. Standard of Review*

■■■ We review de novo a denial of a writ of habeas corpus. *Chatman v. Marquez,* 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). We also review de novo a district court determination that counsel rendered effective assistance. *Butcher v. Marquez,* 758 F.2d 373, 376 (9th Cir.1985). Sentencing within statutory guidelines is left to the discretion of the sentencing court, and its decision is reviewable only for an abuse of discretion. *United States v. Givens,* 767 F.2d 574, 585 (9th

**5.** The court limited the scope of the hearing to the accuracy of five statements: (1) that Jones had been known by DEA since 1974; (2) that he, his wife, mother and stepfather owned property worth $833,833; (3) that his current residence was valued at $175,000; (4) that he is one of the most significant drug dealers on the west coast and is the link in the flow of Mexican drugs; and (5) that the probation officer found his property wealth "curious" in light of his stated income.

**6.** The statement, "According to the Drug Enforcement Administration, Mr. Jones is one of the most significant 'drug dealers' on the West Coast as he is the link between illicit drugs imported from Mexico and distributed on the West Coast, including the Seattle area" was deleted and replaced by the following: "Mr. Jones is a significant distributor on the West Coast of illicit drugs imported from Mexico."

Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985).

## B. *Inaccurate Sentencing Information*

Jones argues that his sentence was based on a presentence report that was inaccurate and unreliable as to his involvement in drugs. He contends that statements by DEA agents are "totally uncorroborated and completely speculative," and are based on "highly dubious" information from "unnamed and non-credible sources." He argues that the unreliable statements should have been deleted from the report, and seeks resentencing based on accurate information.

The government argues that Jones has failed to show that the sentencing judge relied on the challenged information. It contends also he waived his right to attack the accuracy of the report by failing to raise the issue at sentencing or on appeal.[7]

■ Jones is correct that a sentence predicated on *material* false information denies due process. *See Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). But *Townsend* is an exception to the general rule that due process does not require sentencing information to meet the same rigorous evidentiary standards required at trial. *See Williams v. New York,* 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 337 (1949); *United States v. Morgan,* 595 F.2d 1134, 1136 (9th Cir.1979) (judges have discretion to consider a wide variety of information from various sources to tailor punishment to the criminal).

■ Where a § 2255 petition alleges reliance on materially false sentencing information, the sentence will be vacated on appeal only if the challenged information is (1) false or unreliable and (2) demonstrably made the basis for the sentence. *Farrow*

*v. United States,* 580 F.2d 1339, 1359 (9th Cir.1978) (en banc).

### 1. *Material Falsity*

Jones relies on *United States v. Weston,* 448 F.2d 626 (9th Cir.1971) (sentence vacated where the presentence report was not supported by the underlying confidential report), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).[8] *Weston* extended the "false information" rationale of *Townsend,* holding that a sentence cannot be predicated on information where "the factual basis for believing the [challenged information] was almost nil." *Id.* at 633.

*Weston* is distinguishable and does not control here. In *Weston,* the sentencing judge clearly used the challenged information to enhance the defendant's sentence. He had decided initially on a five-year sentence, but added 15 years after reviewing the presentence report. *Id.* at 628–30. Here, Judge Voorhees did not use the report (and specifically the several challenged portions) to enhance Jones' sentence beyond the period warranted by the conviction itself. He found expressly that "[t]he sentence imposed by the Court was well warranted by the trial testimony."

■ Second, the defendant in *Weston* refused to cooperate with the probation office in preparing the presentence report, so the facts in the report were one-sided in favor of the government. *Id.* at 628. Nor was an evidentiary hearing held in *Weston* to allow the defendant to challenge the report. Here, the report includes information favorable to Jones, and he was able to present evidence regarding the accuracy of the report at a later evidentiary hearing. Where such countervailing information favorable to the defendant is available to the sentencing judge, consideration of the alleged misinformation does not rise to "an error of constitutional magnitude." *Unit-*

---

7. Jones may have waived his right to challenge the report, as the magistrate found. However, since the district judge chose to decide the claim on the merits, we shall do the same.

8. The court in *Weston* characterized the confidential report as "unsworn evidence detailing otherwise unverified statements of a faceless informer that would not even support a search warrant or an arrest." 448 F.2d at 631.

*ed States v. Stevenson,* 573 F.2d 1105, 1107 (9th Cir.1978).

Third, the *Weston* court held it improper to require the defendant to refute statements where the burden of disproving was "intolerably high," *United States v. Miller,* 588 F.2d 1256, 1266 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), and where the report rested on only the "barest factual foundation." *Id.* Here, the challenged information was largely within Jones' power to refute and was not derived solely from unnamed confidential sources. In fact, the challenged information regarding the value of his property was derived from Jones himself. *See Morgan,* 595 F.2d at 1137 (*Weston* satisfied where presentence report allegations were based on police reports and statements made by defendant himself).

Jones contends the report "should be completely accurate in every material respect." No authority is cited for this proposition, and it conflicts with our standard as to accuracy of presentence reports. In *Weston,* we noted: "A rational penal system must have some concern for the *probable accuracy* of the informational inputs in the sentencing process." 448 F.2d at 634 (emphasis added). Information in the presentence report may be relied on in sentencing if it "is amplified by information such as to be persuasive of the validity of the charge there made." *Id.* Here, the judge found that testimony presented at trial and at the evidentiary hearing was sufficient to support the challenged statements as to Jones' involvement in narcotics. We shall not interfere with the trial judge's broad discretion to decide not only the relevance but the reliability of sentencing information. *Morgan,* 595 F.2d at 1138.

■ Jones has failed to prove that the information in the presentence report was materially false or unreliable so as to constitute a due process violation.

### 2. *Reliance*

Even if Jones could show that the presentence report included materially false information, he does not prevail on the second prong of the *Farrow* test, that the information was made the basis for the sentence. A § 2255 motion "must be denied unless it affirmatively appears in the record that the court *based* its sentence on improper information." *Farrow,* 580 F.2d at 1359 (emphasis in original). *See also United States v. Williams,* 668 F.2d 1064, 1072–73 n. 21 (9th Cir.1981) (abuse of discretion where district court expressly relied on inaccurate statements in presentence report).

■ We shall affirm a sentence where the trial judge disavows reliance on the challenged sentencing information. *United States v. Gonzales,* 765 F.2d 1393, 1395 (9th Cir.1985) (judge expressly stated that challenged information as to prior offenses would not be taken into account), *cert. denied,* — U.S. —, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986); *United States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984) (rhetorical question, expressing skepticism about challenged information, had same effect as explicit statement of non-reliance); *Portillo v. United States,* 588 F.2d 714, 717 (9th Cir.1978) (en banc) (on reconsideration, judge concluded sentence would have been the same had he known the prior conviction was invalid); *United States v. Haili,* 443 F.2d 1295, 1301 (9th Cir.1971) (sentence affirmed where judge expressed intent to sentence based on trial evidence without regard to challenged information). Such district court findings of non-reliance will be taken at face value. *Gonzales,* 765 F.2d at 1397.[9]

Jones argues that the court's finding, that it would have imposed the same sen-

---

9. Jones suggests that the court's recollection of its basis for sentencing might be unreliable after six years. But in *Brown v. United States,* 610 F.2d 672 (9th Cir.1980), this court held that the judge's findings as to information relied on in sentencing "based on the court's own recollection of [defendant's] sentencing," even where made six years later, "will not be overridden." *Id.* at 674.

tence even if the report had been submitted originally as revised, does not constitute a finding of non-reliance on the other challenged statements. But the court's order reveals that it made several findings as to its reliance on the report: (1) the sentence was not based on inaccurate information; (2) it did not rely on the challenged statements that were modified; (3) the report revisions were consistent with trial testimony about Jones' "heavy involvement in heroin trafficking;" and (4) the sentence was justified based on trial testimony, regardless of the presentence report.

Jones has failed to demonstrate that the sentencing judge relied on the challenged information. Neither prong of the *Farrow* test has been satisfied. We affirm the denial of his § 2255 motion to set aside the sentence.[10]

### C. *Ineffective Assistance of Counsel*

Jones contends that his counsel's failure to show him the report or challenge inaccurate statements violated his right to effective assistance of counsel and requires that sentence be vacated.[11]

To prevail on such a claim, a defendant must identify acts or omissions that are "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The

defendant must show also that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 104 S.Ct. at 2068.

In *Donn*, we stated that "a defense counsel's failure to show his client the presentence report may fall below the standard of reasonably competent representation." 661 F.2d at 824. But the holding was narrow. Because Donn's allegation that the sentencing court had *relied* on the challenged information was "reasonably plausible," we remanded for an evidentiary hearing. *Id.* at 825. Here, the record shows the court did not rely on the challenged information but imposed a sentence warranted by the testimony at trial.

Jones' ineffective assistance of counsel claim fails. He was not prejudiced by his counsel's failure to challenge the alleged inaccuracies.

### D. *Parole Commission's Reliance on False Information in the Presentence Report*

Jones argues that the Parole Commission relied upon false statements in the report in exceeding its parole guidelines.[12] The decisions of the Commission are committed to its sound discretion. 18 U.S.C. § 4218(d). The Commission has been delegated broad powers to implement parole statutes. 18 U.S.C. § 4203(a)(1). Its inter-

---

**10.** Jones argues that he had no opportunity to see the report or prepare a timely challenge to it. He suggests that Rule 32(c)(3), Fed.R. Crim.P., conferred upon him a right to review the report. While the amended version of this rule does grant such a right to convicted defendants, the version of the rule in effect in 1978, when Jones was sentenced, conferred no such right. That version provided that before sentencing, "the court shall *upon request* permit the defendant, *or his counsel* if he is so represented, to read the report ...; and the court shall afford the defendant *or his counsel* an opportunity to comment thereon.... Rule 32(c)(3)(A), Fed.R.Crim.P. (1978) (emphasis added).

Jones is correct that "fundamental fairness" requires an opportunity to see and challenge the presentence report. *See United States v. Perri*, 513 F.2d 572, 575 (9th Cir.1975). However, under the pre-1983 version of Rule 32, this fairness requirement is satisfied by making a copy

of the report available to his counsel. *United States v. Donn*, 661 F.2d 820, 823 (9th Cir.1981).

Jones does not contend that the *court* denied him an opportunity to review the report. Because his counsel had a copy of the report, Rule 32(c)(3) was satisfied here. Jones' assertion that *his counsel* failed to disclose the report may support his ineffective assistance of counsel claim. *See Donn*, 661 F.2d at 824.

**11.** Jones is incorrect in asserting that the magistrate ruled he had waived his right to challenge competency of counsel. In fact, the magistrate reviewed this claim on the merits and concluded that Jones had "fail[ed] to present any facts which would establish prejudice."

**12.** The Commission placed Jones in the "Greatest I" severity category, which under the guidelines would result in 40–52 months of incarceration. It decided to exceed the guidelines in Jones' case due to aggravating factors.

pretation of its regulations is entitled to deference unless the interpretation is shown to be plainly erroneous or inconsistent with regulations. *Williams v. United States Parole Commission,* 707 F.2d 1060, 1063 (9th Cir.1983) (citing *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

■ Jones does not allege that the Commission, in exceeding its guidelines as to his parole eligibility, violated its regulations or abused its discretion in making parole determinations. Moreover, based on the findings and actions of the district court, we conclude that the sentencing information before the Parole Commission was sufficiently reliable to preclude any attack on the Commission's use of that information in reaching its decision. Accordingly, Jones' claim with respect to the Parole Commission must fail.

E. *Sentencing Court's Expectation as to Jones' Imprisonment*

■ Jones contends his sentence must be set aside because the court was given "inaccurate information regarding the guidelines the Parole Commission would use in its determination of his parole eligibility." It is not disputed that the court relied on the Probation Office's estimates as to Jones' probable parole date.[13] The issue is whether the sentencing judge's use of such probation office estimates constitutes reliance on "misinformation of constitutional magnitude," *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972), where the Parole Commission decides to exceed its parole guidelines.

Jones relies on *United States v. DeMier,* 520 F.Supp. 1160 (W.D.Mo.1981), *aff'd,* 671 F.2d 1200 (8th Cir.1982). *DeMier* is distin-

guishable. The sentencing judge there was provided information based on *outdated* Commission guidelines.[14] Such "objectively ascertainable error" will support a collateral attack under § 2255. *United States v. Addonizio,* 442 U.S. 178, 187, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979).

This case is controlled by the Supreme Court's decision in *Addonizio:*

> The claimed error here—that the judge was incorrect in his assumptions about the future course of parole proceedings—does not meet any of the established standards of collateral attack.
>
> .   .   .   .   .
>
> And in our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.
>
> As a practical matter, the subjective intent of a sentencing judge would provide a questionable basis for testing the validity of his judgment.

442 U.S. at 186–87, 99 S.Ct. at 2241.

In *Addonizio,* the Parole Commission changed its parole guidelines *after* the defendants were sentenced, resulting in prison terms longer than the sentencing judge had anticipated. The Court held that "subsequent actions taken by the Parole Commission—whether or not such actions accord with a trial judge's expectations at the time of sentencing—do not ... provide a basis for collateral attack on their respective sentences pursuant to § 2255." 442 U.S. at 190, 99 S.Ct. at 2243; *see also Williams,* 707 F.2d at 1064.

The Court in *Addonizio* relied on the extensive statutory scheme which commits parole decisions to the discretion of the

---

**13.** In a letter to the Parole Commission dated December 30, 1983, Judge Voorhees summarized his understanding of his presentence meeting with the probation officers: (1) the offense severity rating "very high" would probably result in parole within 26 to 36 months; (2) the Parole Commission might deem the offense to be rated "Greatest I", which would result in a prison term of 40–52 months; and (3) because

of Commission guidelines, Jones would be required to serve no more than 60 months.

**14.** In *DeMier,* the sentencing reports prepared in July 1979, and the sentences imposed in August 1979, were based on *1978* Parole guidelines. 520 F.Supp. at 1161–62. The *1979* guidelines, although received late, carried a transmittal date of June 6, 1979. *Id.* at 1166 n. 7.

Parole Commission. *Id.*, 442 U.S. at 188, 99 S.Ct. at 2242. The Court's view of the sentencing judge's role in this statutory scheme is unambiguous:

> [T]he judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. Nothing in § 2255 supports—let alone mandates—such a frustration of congressional intent.

*Id.* at 190, 99 S.Ct. at 2243 (emphasis added).

*Addonizio* was followed in *United States v. Coyer*, 732 F.2d 196 (D.C.Cir. 1984), where the court held that a probation officer's estimate of the Parole Commission's likely action did not constitute "a factual determination upon which the District Court could reasonably rely." *Id.* at 200. Such an estimate "does not rise to the level of objectively ascertainable information" on which to grant relief under § 2255. *Id.* at 201.

Here, the record is clear that the district judge viewed the probation officers' reports as mere estimates of Jones' parole eligibility. The judge recognized that the guidelines on which it relied in sentencing Jones were not binding on the Parole Commission. We have reviewed the "Parole Prognosis" attached to the presentence report. As the court in *Coyer* observed: "The probation officer's statement was on its face and by its express terms an estimate, nothing more, nothing less." 732 F.2d at 200.

Jones' claim that he should be afforded relief under § 2255 because of the court's reliance on estimates as to the Commission's application of parole guidelines fails here. We follow *Addonizio* in holding that subjective expectations of the sentencing judge based on probation office estimates do not rise to "misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447, 92 S.Ct. at 592.

CONCLUSION

The district court did not err in denying the § 2255 motion to vacate or amend the sentence. Jones failed to show that the district court relied on material false statements. He was not denied effective assistance of counsel because he was not prejudiced by his counsel's failure to challenge inaccuracies in the presentence report.

 The Parole Commission did not abuse its discretion in exceeding its parole guidelines. The sentencing judge's subjective expectations about the Parole Commission's application of parole guidelines are not sufficient grounds for collateral attack on a sentence under § 2255.

AFFIRMED.